**PROVIDENT NATIONAL BANK, William White, Co-Executors of the Estate of Helen Bonnell Scott**

v.

**UNITED STATES of America.**

**No. 79–647.**

United States District Court,
E. D. Pennsylvania.

Dec. 16, 1980.

Theodore Flowers, Philadelphia, Pa., for plaintiffs.

Gregory Hrebiniak, Washington, D.C., for defendant.

### MEMORANDUM

SHAPIRO, District Judge.

Plaintiffs bring this action pursuant to 28 U.S.C. § 1346(a)(1) to obtain a refund of

federal estate taxes. Cross motions for summary judgment on stipulated facts are presently before the court. The sole question to be resolved is whether the decedent exercised a general testamentary power of appointment in whole or in part by a will dated September 10, 1973. We hold that testatrix exercised her power of appointment partially and that plaintiffs are therefore entitled to a tax refund in an amount to be determined in accordance with this opinion.

Plaintiffs are Provident National Bank and William White, duly appointed and acting co-executors of the Estate of Helen Bonnell Scott, a resident of Haverford, Pennsylvania who died on October 6, 1973. Within the time prescribed by law the plaintiffs filed the federal estate tax return for the Estate of Helen Bonnell Scott with the District Director of Internal Revenue at Philadelphia, Pennsylvania. The tax shown to be due thereon in the amount of $239,-223.03 was paid by the application of a portion of an advance deposit made by plaintiffs on July 5, 1974 in the amount of $246,471.96. A statutory notice of deficiency of tax principal in the amount of $197,-531.11 was timely received by the plaintiffs on November 28, 1977. A timely assessment in the amount of $197,531.11 plus $50,866.97 in interest was made on March 8, 1978, and paid on or about March 16, 1978 by the application of an unapplied advance deposit of $7,248.93, plus an additional remittance of $239,339.44, for a total payment of $246,588.37. The unpaid balance of the assessment represents interest. A timely claim for refund of estate tax and interest paid was filed on March 31, 1978, and a supplement thereto was filed on November 3, 1978, with the Philadelphia Service Center, Philadelphia, Pennsylvania. This suit was timely filed on February 20, 1979.

Helen Bonnell Scott died testate, survived by one natural child, Gregory Sherman Scott (born September 15, 1952) and two adopted children, Warren Houston Scott (born July 24, 1948) and Meredith Scott Winslow (born December 9, 1949). Henry H. Bonnell, the father of Helen Bonnell Scott, had died testate on November 7, 1926. Under the will of Henry H. Bonnell, Helen Bonnell Scott was given the power to appoint the principal of a trust to "such person or persons, and under such conditions and limitations" as she might provide in her last will. In default of appointment, the principal was to be paid to her "issue . . . in such shares and proportions as the said issue would be entitled to take under the intestate laws of the State of Pennsylvania."

Helen Bonnell Scott dealt with the power to appoint the principal of the trust in Paragraph Fourth of her last will and testament (she also dealt with a power of appointment under the will of her mother, which is not here relevant). As of the alternate valuation date, timely elected by the executors of the Estate of Helen Bonnell Scott, the aggregate value of the combined trust over which Helen Bonnell Scott had the power of appointment was $1,211,-917.37.

By adjudication of the Philadelphia Court of Common Pleas, Orphans' Court Division (Shoyer, J.) dated June 1, 1976, the Auditing Judge ruled that Helen Bonnell Scott validly exercised her power of appointment to a partial extent only and therefore awarded principal and income, less a reserve for possible liabilities, to Gregory Sherman Scott, Warren Houston Scott and Meredith Scott Winslow in the shares and proportions set forth in Subparagraph II of Paragraph Fourth of the will in which Helen Bonnell Scott exercised her power of appointment over the trust fund.

The issue to be decided by this court is whether the decedent, Helen Bonnell Scott, exercised her power of appointment wholly or partially. Since this power of appointment was created prior to 1942, assets subject to the power are includable in the federal taxable estate only to the extent the will is deemed to have "exercised" the

power. § 2041(a)(1)(A) Internal Revenue Code, 26 U.S.C. § 2041(a)(1)(A). If Mrs. Scott failed to exercise the power and the trust principal passed to her "issue" in default of appointment, the trust assets would be completely exempted from her taxable estate.

Because of her concern that her adopted children might not be held entitled to the principal of the trust as "issue," Mrs. Scott dealt with her power of appointment by alternative provisions in the Fourth Paragraph of her will. The first, Paragraph Fourth I, was to become operative "[I]f it is finally determined by the court having jurisdiction over the trusts created by the Will of my father" that decedent's adopted children shared equally with her natural child in default of appointment. In that event, the will disposed of the entire trust fund by a full exercise of the power. Paragraph Fourth II was to be operative "[I]f, but only if, it is finally determined by the court having jurisdiction over the trusts created under the Will of my father" that the adopted children did *not* share equally with the natural child in default of appointment. Under this provision, the power of appointment was only partially exercised.

Therefore, a determination of whether "issue" included adopted children by the court with jurisdiction over the Henry Bonnell trust was a condition precedent to the testamentary exercise of the power of appointment in whole or in part. The government does not dispute that the court with such jurisdiction was the Philadelphia Court of Common Pleas, Orphans' Court Division. By Order of that court, the account was listed for re-audit on March 2, 1976, after notice to the Internal Revenue Service, because a resolution of whether the donee had fully or partially exercised her power of appointment under her father's will was declared essential to a determination of the liability for federal estate tax and possible inheritance taxes.

On June 1, 1976, Judge Shoyer rendered an adjudication in the Bonnell Estate holding that Mrs. Scott had validly exercised her power of appointment to a partial extent. (Stipulation of Facts, Exhibit N, p. 6). Unappealed by any party in interest after notice, this determination was final. Notwithstanding this final determination by the court having jurisdiction over the trusts, the government argues that decedent exercised her power of appointment not partially but wholly. According to the government, Paragraph Fourth II of the decedent's will was never operative: first, because Judge Shoyer never decided whether "issue" included adopted children, but avoided that specific ruling; and second, if he did so decide, his decision was (a) wrong under the later decision of the Pennsylvania Supreme Court in *Sykes Estate*, 477 Pa. 254, 383 A.2d 920 (1978), which held "issue" presumptively to include adopted children, and (b) not binding on this court under the doctrine of *Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). We disagree with both these contentions.

Concededly, Judge Shoyer did not specifically hold that "issue" included adopted children. However, Judge Shoyer was keenly aware of the question before him and his role in resolving that question. The Judge noted:

> The statement of Proposed Distribution and the notice to the parties in interest point out that on the one hand, Mrs. Scott exercised her power of appointment *fully* to accomplish certain purposes, if the Court should determine that her adopted children are includable as her 'issue' under her father's will, and *partially*, if the Court should determine that "issue" in her father's will does not include adopted children.

Stipulation of Facts, Exhibit N, p. 3 (emphasis original).

After discussing relevant Pennsylvania law on this issue, including *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972) (Held: the term "children" presumptively included

adopted children), the court framed the issue before it as follows:

[T]he accountants have taken the position that a resolution of the question as to whether the donee has *fully* or *partially* exercised her power of appointment under her father's will is essential to a determination of the liability for Federal Estate Tax and possible inheritance taxes . . . . The issue presented to this court is whether Helen S. Bonnell Scott, the life income beneficiary, who was granted a general power of appointment under the will of her father, Henry H. Bonnell, can effectively exercise this power only partially.

Stipulation of Facts, Exhibit N, pp. 5–6 (emphasis original).

Judge Shoyer then went on to rule "that Helen Bonnell Scott validly exercised her power of appointment to a partial extent only, *as set forth more fully in her Will* . . . ." (Stipulation of Facts, Exhibit N, p. 6, emphasis supplied).

Any ambiguity or confusion in Judge Shoyer's opinion mirrored the law of Pennsylvania at that time. In the 1972 decision in *Tafel, supra,* the Pennsylvania Supreme Court departed from prior precedent and held that a testator, in making a gift to a "child" or "children" other than testator's would be presumed, unless a contrary intention appears, to have intended to include adopted children. However, the lower courts were unwilling to extend *Tafel* to situations where a gift was to "issue" because Pennsylvania law had always distinguished "issue" from "children." "To the layman as well as the lawyer, 'issue' has meant actual physical offspring as distinguished from 'children' which may mean natural, adopted, foster or stepchildren." *Howlett Estate,* 366 Pa. 293, 298, 77 A.2d 390, 393 (1951); *see, also, Fownes Trust,* 421 Pa. 476, 220 A.2d 8 (1966); *Benedum Estate,* 427 Pa. 408, 235 A.2d 129 (1967). It was not until 1978, two years after Judge

Shoyer's decision in this matter, that the Pennsylvania Supreme Court extended the *Tafel* rule by holding that where the testator has not clearly expressed an intention to limit inheritance to individuals of blood descent, it will be presumed that he intended to include adopted children as beneficiaries of a bequest to "issue." *Sykes Estate, supra.*

The uncertainty following the *Tafel* decision was reflected by many opinions written in the interim period between *Tafel* and *Sykes.* For example, in *Annenberg Estate,* 9 D. & C.3d 502 (1977), the court noted:

Subsequent Supreme Court decisions have done little to clarify the rule in *Tafel,* nor have they eliminated the need for determining the intent of the testator to include or exclude adoptees. It still remains extremely difficult for persons to undertake intelligent estate planning without guidance when some of testator's issue have adopted children.

*Id.* at 512–513; *see also, Edgar H. Butler Trust,* 27 Fid.Rep. 132 (O.C.Phila.1976); *Fleming Trust,* 27 Fid.Rep. 491 (O.C.Phila. 1976); *Riley Trust,* 30 Fid.Rep. 51 (O.C. Phila.1980) (Shoyer, J. concurring); *Bower Trust,* 30 Fid.Rep. 323 (O.C.Phila.1980) (Shoyer, J. dissenting).

It is clear Judge Shoyer was reticent to hold that "issue" included adopted children but this reticence was warranted in light of the stage of development of Pennsylvania law regarding the interpretation of wills where other than natural children might be involved. We find that Judge Shoyer implicitly held that adopted children were not included in a gift to "issue" in determining that Mrs. Scott partially exercised her power of appointment; he fully understood the issues presented and his holding directly referred to the terms of the will. No appeal was taken to resolve any uncertainty, apparent or actual. Therefore, it was Judge Shoyer's adjudication, a final determination by the court having jurisdiction over the trusts created by the will of testa-

trix' father, that made operative Paragraph Fourth II of testatrix' will.

The government argues that we are not bound by the Orphans' Court adjudication under the doctrine set forth in *Commissioner v. Bosch, supra.* In *Bosch,* the Supreme Court held that where federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination of a state trial court and need only give "proper regard" to rulings of state courts other than the highest court where an underlying issue of state law is involved. It was not denied that the state proceedings were there brought for the purpose of directly affecting federal estate tax liability which is certainly not true of the Orphans' Court audit in this case. Unlike *Bosch,* the will in the instant case committed the determination of rights to the discretion of the Philadelphia Orphans' Court; the appropriate focus here is not on the law of the forum state but rather on the final determination which was to be made by a specific court, the precondition designated by the testatrix to make operative one or the other of two alternative testamentary dispositions. This case is analogous not to *Bosch* but to *Willets v. Commissioner,* 50 T.C. 602 (1968), in which a New Jersey trial court awarded a taxpayer his share of trustee commissions in four successive installments. The Internal Revenue Service contended that the Tax Court was bound by the *Bosch* doctrine to make an independent determination of when the taxpayer was entitled to receive the commissions under New Jersey law but the Tax Court refused:

We think *Bosch* does not go that far. [T]he principles enunciated in *Bosch* do not, in our view, justify a Federal court's redetermining the rights of a taxpayer where the determination of those rights has undoubtedly been committed by state law to the sound discretion of a trial court, and such discretion has been exercised and not clearly abused.

Assuming arguendo that *Bosch* is applicable and this court, not bound by the state trial court determination, reexamines the issue to determine what the Pennsylvania Supreme Court would have decided in 1973 or 1976, it is by no means clear it would have decided *Sykes* then by holding as it did in 1978. If *Tafel* made *Sykes* inevitable, the learned scriveners of the Scott will would not have taken such elaborate precautions against the uncertainty they perceived and discussed with their client. Moreover, even if the *Sykes* opinion had been handed down prior to the death of Helen Bonnell Scott, the Pennsylvania Supreme Court would not have applied the *Sykes* doctrine to this case in contravention of the testatrix' intent clearly expressed in her will. Under the decisions of the Supreme Court of Pennsylvania both before and after *Sykes,* and as acknowledged in *Sykes* itself, "a will is to be construed according to the intent of the testator." *Sykes,* 477 Pa. at 257, 383 A.2d at 921. *Sykes,* like *Tafel,* explicitly announced a rule of construction, *i. e.,* a presumption, in the *absence* of a contrary expression of intent.[1]

But there was no need to presume Mrs. Scott's intention; her will clearly expressed an intent not to have a presumption under the "law of Pennsylvania" decide whether or not "issue" included adopted children. Instead, her will created an inherent trigger mechanism for exercising her power of appointment, either in whole or in part: a final determination by the court having jurisdiction over her father's trusts, not some later determination by the Pennsylvania Supreme Court regarding some other will

---

1. "We hold today that *where a testator has not clearly expressed an intention to limit inheritance under his will to individuals of blood descent,* it is *presumed* that he intended to include adopted children as beneficiaries of a bequest to 'issue.'" *Sykes,* 477 Pa. 257, 383 A.2d at 921 [Emphasis added].

nor what the Supreme Court might have decided if presented with her will. The scriveners of the will and the testatrix were well aware of the uncertainty in Pennsylvania law at that time [2] and testatrix' exercise of her power of appointment was drafted in the alternative to ensure that the intent of the testatrix, expressly stated in her will, would be realized.[3] Unlike *Sykes*, where neither the language of the will nor testator's scheme of distribution established with reasonable certainty whether testator's intention was to include adopted children as "issue," Mrs. Scott's intention was very plain and would have been respected by the Pennsylvania Supreme Court in 1973, 1976, or 1978.

The relevant focus is not the law of Pennsylvania as ultimately determined by the Supreme Court but the final.decision of the court with jurisdiction over the trusts established by the father of Helen Bonnell Scott. Its decision, right or wrong, that "issue" did not include adopted children, made operative Paragraph Fourth II of Helen Bonnell Scott's will in which she exercised her power of appointment not in whole but in part. Accordingly, the plaintiffs are entitled to a refund of the taxes paid, in an amount to be stipulated by the parties or determined by this court after submissions by each party.

2. Paragraph Fourth of the Will of Helen Bonnell Scott states:

Under the Will of my father, Henry H. Bonnell, who died November 7, 1926, I am given powers to appoint by my Will certain principal held in trust thereunder to such person or persons and under such conditions and limitations as I shall direct. To the extent I do not exercise the testamentary powers of appointment under my father's Will, principal is distributable to my issue in accordance with provisions of the intestate laws of Pennsylvania, as referred to in my father's Will. I am advised that there is uncertainty as to whether my adopted children, Meredith and Warren, and their issue are included in the class of persons who would take the principal under my father's Will if I do not exercise my powers, and I am advised that this will not be determined by the.court having jurisdiction over my father's estate until after my death....

3. Paragraph Fourth of the Will of Helen Bonnell Scott states:

... It is my intent that my three children, and the issue per stirpes of any of those who may die before receiving his or her share hereunder, shall participate in my estate and in the trusts created by my parents in the following proportions subject to certain differences as to whether the child, or child's issue, receives his or her share in trust or outright: forty per cent (40%) to Meredith or her issue; forty per cent (40%) to Gregory or his issue; and twenty per cent (20%) to Warren or his issue....