DUNCAN, Circuit Judge.
Federal courts sitting in diversity are bound to apply the substantive law of the state in which the court sits, as that law has been applied by the state’s highest court. Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); see also Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, I agree with the majority that the substantive law of Virginia applies to this case. Because, however, I believe that the district court correctly applied Virginia law as it has been interpreted by the Virginia Supreme Court, I respectfully dissent from the majority opinion mandating reversal.
The Virginia Supreme Court holds that “collapse,” if not defined elsewhere in an insurance contract, means “to break down completely: fall apart in confused disorganization: ... disintegrate.” Lower Chesapeake Associates v. Valley Forge Ins. Co., 260 Va. 77, 532 S.E.2d 325, 330 (2000). While the majority correctly notes that Lower Chesapeake was not a summary judgment case, it notes a distinction without a difference. The Virginia Supreme *532 Court in Lower Chesapeake defined “collapse” as a matter of law. Id. (holding that collapse means “to break down completely: fall apart in confused disorganization: ... disintegrate,” without any reference to the factual findings of the district court (alterations in original) (internal quotations omitted)). It further held that the district court applied the correct legal definition of collapse and separately held that the district court’s factual finding that the deck at issue in that case met the definition was not clearly erroneous. Id. at 330-31 (“[T]he [trial] court properly applied the ordinary and customary meaning of [collapse] when reaching its conclusion.”) In other words, the Virginia Supreme Court did give deference to the district court’s factual findings, but not in regards to the definition of collapse. That definition is a legal, not factual, definition and is therefore applicable to this summary judgment proceeding.
Using that definition of “collapse,” and taking everything that the plaintiffs posit as true, there is no basis here on which a jury could find that the flooring in question fell apart in confused disorganization. The expert reports and proffered testimony upon which the majority relies to create a dispute of material fact simply state legal conclusions—not factual assertions. See Weinstein’s Federal Evidence § 704.04[1] (2004) (“In general, testimony about a legal conclusion, or the legal implications of evidence is inadmissible under Rule 704.”). No one disputes that the flooring in question was damaged and required repairs. But no actual evidence, as opposed to mere conclusory statements, demonstrates that the flooring in question came close to “breaking down completely” or “disintegrating” as required by Virginia insurance law.
I would therefore affirm the well reasoned opinion of the district court.*

 As the district court succinctly notes: “The ... evidence submitted to the Court, by both parties, similarly fails to describe damage beyond the clearly established rot, decay, and deterioration. In their briefs, Lynnhaven and Kyrus equate this deterioration with 'disintegration' and 'collapse’ without setting forth any additional facts beyond the undisputed decay and deterioration of the restaurant's subfloor. Likewise, Millenium’s expert report opines that the subfloor 'disintegrated' and 'coilapsed,’ but provides no objective support for these conclusory statements. Mere recitation of the words 'disintegration' and 'collapse' is not sufficient to bring the damage within the scope of the ordinary and accepted meaning of 'collapse.' The Court finds no evidence that the subfloor broke down completely, fell apart in confused disorganization, or disintegrated.” Dist. Ct. Opinion and Order at 17 (E.D.Va.# 2:02cv238, Oct. 31, 2003).