Mackinac Island Carriage Tours, Inc., a Michigan corporation v. Commissioner.
Mackinac Island Carriage Tours v. Commissioner
Docket No. 5253-66.
United States Tax Court
T.C. Memo 1970-230; 1970 Tax Ct. Memo LEXIS 131; 29 T.C.M. (CCH) 984; T.C.M. (RIA) 70230; August 11, 1970, Filed *131 Walter J. Murray, Woodward, Detroit, Mich., for the petitioner. Robert T. Hollohan, for the respondent. 985 MULRONEY Supplemental Memorandum Opinion MULRONEY, Judge: Our Memorandum Findings of Fact and Opinion in this case was filed June 26, 1968 (T.C. Memo. 1968-128). Decision pursuant to said Memorandum Findings of Fact and Opinion was entered by this Court on November 5, 1968. The case was appealed to the Sixth Circuit Court of Appeals by both parties. On January 6, 1970, the Court of Appeals rendered its opinion (419 F. 2d 1103 (1970)), which orders the case remanded to the Tax Court for "further action" in accordance with its opinion. Hearing after remand and in accordance with the procedendo issued in the case has been had in this Court. No new evidence with respect to the issues in the case was submitted by the parties [1] at said hearing and no motion was made by either party for any additional trial or for the taking of any additional evidence. Petitioner filed a motion for summary judgment of no deficiency on the ground that it is entitled to same on the original record in this case in view of the holding of the Sixth Circuit on its appeal. *132 Respondent moved the Court to determine deficiencies against petitioner in the full amounts set forth in his notice for the years involved. The deductions taken by petitioner were rental payments under leases with stockholders and nonstockholders. We were led to believe that any possible question concerning deductions taken with respect to rental payments under leases with nonstockholders had been abandoned by respondent before trial and before our opinion in the case was published and filed. Our opinion heretofore rendered decided no issue with respect to leases with nonstockholders because in our opinion no issue with respect to the nonstockholder *133 leases remained in the case. We now make the same findings of fact with one small change not material to the opinion, and the same opinion and decision in the case that we heretofore made. However, we add the following to our opinion which is by way of explanation. This explanation is made necessary because of what transpired after our opinion had been published. It will be necessary to repeat here a few of the background facts. Petitioner, a Michigan corporation, has been operating horse-drawn sight-seeing carriage tours on Mackinac Island in Lake Michigan since its formation in 1947. It secures one license each year from the State Park Commission to operate 55 sightseeing carriages on the Island. It rents the carriages it uses, and the issue in this case involved the business expense deduction the petitioner took for carriage rent paid under written leases during the fiscal years 1961, 1962 and 1963. Respondent's notice of deficiency states: It is determined that deductions claimed as rental payments for horse drawn carriages and taxis in the taxable years ended October 31, 1961, October 31, 1962, and October 31, 1963, constituted distributions of earnings rather than rental *134 payments and are disallowed as follows: Taxable Year Ended
Total Claimed
Total Allowable
Disallowed
October 31, 1961
$75,801.00
$35,500.00
$40,301.00
October 31, 1962
85,800.00
36,000.00
49,800.00
October 31, 1963
97,800.00
36,000.00
61,800.00
Petitioner has some 40-odd shareholders who hold all of its issued 55 shares of stock. Petitioner conducted its business by renting carriages and the city carriage licenses issued by the city of Mackinac Island to the carriage owners from two groups of lessors. The first group of lessors was all of petitioner's 40-odd stockholders who leased to petitioner the 55 sight-seeing carriages petitioner used in its touring business. Beginning with the formation of petitioner in 1947 each stockholder (who was then an independent carriage operator) executed a lease renting his carriage to petitioner. Beginning in 1958 new leases were executed. In these 1958 leases each stockholder recited exactly how many shares of stock in 986 petitioner he owned and the leases stated he was leasing his carriage or carriages (one for each share of stock) and his City of Mackinac Island carriage license or licenses to petitioner *135 for a period of 20 years. The leases provided for an annual rental payment per carriage that would be within the annual profits of petitioner up to a maximum of $2,500 per carriage. Petitioner operated its entire sight-seeing carriage business with the 55 carriages and city licenses covered by the above leases with all of its stockholders. Petitioner's sight-seeing carriage business was variously described by petitioner's witnesses as its major business, its one source of income, and 96 percent of its business. It was stipulated that the stockholder-lessors were paid rentals for the 55 carriages leased under these leases for the years 1961, 1962 and 1963 in the respective amounts of $1,200, $1,550 and $1,500 per city-licensed carriage. This means petitioner paid all of its 40-odd shareholders for the 55 city licensed carriages it rented from them under the above leases during the years 1961, 1962 and 1963, the amounts of $66,000, $85,250 and $82,500 respectively. There is no dispute between the parties with respect to the number of the sightseeing carriages or the fact that they were all rented from stockholders during all of the years in issue on written leases, or the fact that *136 petitioner paid stipulated amounts of rental under the leases to all of the stockholder-lessors. And we can add that it is clear respondent's notice of deficiency disallowed a portion of the rental paid each year to the stockholder-lessors as constituting "distributions of earnings rather than rental payments." It was our opinion that respondent's determination of deficiency rightly construed did no more than disallow deductions for rental paid to stockholders during the three years in question. As will presently appear, this was exactly the way the parties treated the deficiency notice at the trial and for after trial briefing. At the outset of this case and again on brief, respondent stated he was allowing petitioner rental deduction of $600 per year for each city license and carriage leased from its shareholders. This meant respondent was allowing $33,000 a year as rental deduction for the 55 city licenses and carriages rented from its stockholders each year and it is plain from the notice that the amounts above $600 per carriage were being disallowed as earnings distributions. In our earlier opinion in this case we decided the issue of rental versus earnings distribution with *137 respect to the deductions taken for the so-called rental payments under the above leases with petitioner's stockholders. We held for respondent on the issue. Indeed the lease form used showed on its face that these leases with all stockholders were intended to accomplish what would amount to a dividend distribution. Petitioner's own witnesses testified the rental paid each year represented the maximum amount that could be paid and still leave the corporation financially sound. We held all above $600 paid to the stockholder-lessors per city license and carriage was disallowed. This meant the disallowance would be figured as follows: 1961
1962
1963
Total payment to stockholders
$66,000
$85,250
$82,500
Amount allowed as rent by respondent 33,000
33,000
33,000
Disallowed as deductible rent
$33,000
$52,250
$49,500
We first redetermined the deficiency in accordance with the above computation which is exactly the computation submitted by petitioner's counsel on the Rule 50 hearing. However, we had to lower the disallowance for the year 1962 ($52,250) because the total dollar amount of respondent's disallowance for that year, as shown by his notice *138 of deficiency, was only $49,800. Without regard to why respondent's disallowance for the year 1962 was lower, we did not feel it was appropriate to disallow an amount in excess of the amount disallowed by respondent. It thus appears we have not used a different basis for the year 1962. The foregoing meant that the disallowance of the claimed rental deductions was $33,000 for the year 1961, $49,800 for the year 1962 and $49,500 for the year 1963. Petitioner had the burden to prove that the above portions of its disallowed deductions for carriage rental paid to its stockholders for the 55 sight-seeing carriages was actually paid as rent. In our former opinion in this case we did state that the original carriages leased to petitioner by the owners in 1947 had probably all been replaced by the years in issue. 987 This was based on petitioner's return for 1961 showing it had spent $42,371.43 in the purchase of carriages and equipment which it was depreciating on a 10-year basis. [2] Our statement was also based on the testimony of petitioner's witness Doyle who was a member of the State Park Commission who said that the equipment that was turned over to the corporation when it *139 was formed in 1947 was in bad shape and most of this original equipment had been replaced. However, as the Court of Appeals opinion states, there was no clear evidence that all of the original sight-seeing carriages that had been leased in 1947 had been replaced by 1959. But whether they were or not is not important on the issue of whether petitioner sustained its burden of proof. We can assume the sight-seeing carriages rented to petitioner during the years in issue were the original carriages owned by the stockholders and first rented to petitioner in 1947. This does not lessen petitioner's burden. Three lessor-stockholders testified for petitioner. None was even asked any questions about any carriages that they owned and leased to petitioner during the years in issue. As pointed out in our earlier opinion, they gave testimony concerning the rental value of the licenses. We held in our former opinion that petitioner did not sustain its burden and decision was entered on November 5, 1968 for respondent based on the above *140 disallowances, holding there were deficiencies in petitioner's income taxes for the years 1961, 1962 and 1963 in the respective amounts of $11,876.58, $20,540.45 and $20,729.05. There was in this case some evidence of a second group of leases. In these leases petitioner rented horse-drawn taxicabs and livery carriages from individuals and also the lessor's city licenses. This portion of petitioner's business did not start until 1958. These leases were for one year. Unlike the group of stockholder leases previously mentioned, which ran for 20 years, these leases were negotiated every year. Also, unlike that group, the rental was a flat sum and not geared to petitioner's earnings or profits. None of the leases for taxicabs or livery carriages for any of the years involved was introduced in evidence. There was no evidence as to the exact number or the names of the lessors of this group of leases in existence in any of the three years involved. It is stipulated that the City and State Park Commission granted 6 taxi licenses and 5 livery licenses. And another paragraph of the stipulation states: "The petitioner, during the years in issue, entered into lease agreements with holders *141 of livery and taxi licenses. Copies of the yearly agreements entered into between the petitioner and these individuals are attached hereto as Exhibits 8, 9, 10, 11 and 12." We now feel we might have been in error in our finding in our prior opinion holding that petitioner had entered into leases for 11 taxicabs and livery vehicles, some of which were with stockholders, during the years in issue. The finding was not material for, as previously stated, our opinion was based entirely on the first group of leases with the stockholders. Actually the stipulation does not say there were 11 such leases during the years in issue and the reference to the exhibits as being "copies of the yearly agreements" does not mean they were leases for the years in issue. The exhibits contain six lease agreements for taxi and livery licenses. Three leases are for taxicab licenses for the year preceding the years in issue. Two leases dated April 1966 are for taxicab licenses which lease the city licenses for five years. The other lease is dated in 1961 and it purports to lease some license granted lessor by the State Park Commission that would not expire until 1977 for the full term of said license. One *142 other exhibit, identified as Exhibit 14 attached to the stipulation, was a copy of petitioner's letter to the Mayor and City Council of Mackinac Island making application for licenses on behalf of individuals for the year 1964, with whom it had lease arrangements. The exhibit was not explained or referred to in the body of the stipulation, or in the testimony of any witness. It stands for no more than a list of licenses for a year not involved in this case. Actually the admitted and stipulated facts would tend to show that the renting of nonstockholder-owned taxis and livery carriages in the years in issue varied considerably from year to year. It is admitted the rental deductions petitioner took in these years contain the total rent paid to stockholders for the 55 sight-seeing carriages plus the amounts paid for rental for taxi and livery carriages. The amount paid as rental for the 55 sight-seeing 988 carriages was stipulated. The following computation shows how much was paid in rental for the livery and taxi carriages during the years in issue:
1961
1962
1963
Total amount claimed as rent on return
$75,801
$85,800
$97,800
Stipulated amount paid as rent for 55 sight-seeing carriages 66,000
85,250
82,500
Amount paid for rental of livery taxi carriages
$ 9,801
$ 550
$15,300
*143 The lack of any consistent pattern in the renting of taxi and livery carriages from nonstockholders is clearly demonstrated by the above analysis. It appears without question that both parties treated this group of taxi and livery leases as the nonstockholder group of leases. In his opening statement to the Court in this case petitioner's counsel described the leases petitioner made with its stockholders for the 55 sight-seeing carriages and city licenses and then added: "In 1959, the corporation leased from nonstockholders certain taxis and livery carriages which were used for the transportation of people on Mackinac Island also. These leases were with persons who were not stockholders of the Petitioner corporation. The amount of rent paid in most of those instances was greater than the amount they paid their own shareholders." The record shows that respondent's counsel well knew that the only issue for trial was with respect to the rent paid to stockholders. Respondent's counsel, in his opening statement to the Court, stated: The issue to be resolved here is, really, what portion of the annual sum paid to its shareholders is the Petitioner corporation properly entitled to *144 deduct as a rental expense for the use of shareholders' carriages, harnesses, * * * and what portion of the annual sum paid to its shareholders is the Petitioner corporation not entitled to deduct, since this is in reality - since this distribution in reality is a dividend. Later in this opening statement counsel for respondent stated: The Respondent is taking a position that a portion of this amount paid out in rent is in reality a dividend. The trial of this case shows quite clearly that the only issue that was being tried concerned the leases with the stockholders. There were, as stated, the five taxicab leases introduced covering years before and after the years involved calling for $1,500 or $1,600 rentals. The thrust of the questions concerning these leases shows the evidence of payment to these nonstockholder lessors was designed to justify the rental paid to stockholders on their leases. No interrogation of any witness gave any indication that there was any issue in this case involving leases with nonstockholders. In his brief filed in this Court respondent specifically stated that the deductions for carriage hire which petitioner took for each of the three years "consist *145 of the rental payments to the shareholders and the several non-shareholders who had been granted taxi and livery licenses by the Mackinac Island State Park Commission and the City of Mackinac Island beginning in 1959." Respondent then goes on to state in this brief that the only question presented in this case is: What portion of the amount deducted by the petitioner as "rental" and paid by the petitioner to its shareholders represents a reasonable rental for the use of the assets leased from its shareholders by the petitioner and what portion of the payment represents a distribution of profits to the shareholders? In his original brief and his reply brief filed with this Court in this case [3] respondent made no argument at all that there should be any disallowance of any deduction for carriage rentals paid to nonstockholders. Given the language of the deficiency notice *146 and the above statements to the Court by the parties, it seems clear that respondent cannot for the first time after trial and opinion assert that this case involves the disallowance of rent paid to nonstockholders. It was not until the Rule 50 hearing in this case, after our opinion had been filed and printed, that respondent for the first time asserted he was entitled to a disallowance of rental payments to 989 nonstockholders. He contended that in his deficiency notice the annual rental paid to shareholders and nonshareholders above $600 was disallowed. He stated in argument: "we treated them all as shareholders." [4]
Respondent may have been unaware of the nonstockholder leases at the time he determined the deficiency. He may have though at that time that these totals for carriage rentals as shown on the returns represented amounts paid only to stockholders on stockholders' leases. In no other way can the language in his notice that the disallowed portion *147 of these totals "constituted distributions of earnings rather than rental payments" be explained. But respondent admits that he knew by the time the trial started that the stipulated facts showed that the 55 sight-seeing carriages were rented from stockholders and the taxi and livery carriages were rented from nonstockholders. He knew that the amount paid to both groups of lessors was contained in the total carriage rent deductions for all of the years involved. He told the Court before trial and after trial on brief that the only issue was with respect to stockholder leases. He seemed to recognize that the deficiency notice had to be interpreted as disallowing a portion of the deduction taken for rent paid under the stockholders' leases and not disallowing anything paid under nonstockholder leases. We were not called upon to decide whether any disallowance of rent paid to nonstockholders could be considered within the full sweep of respondent's determination of deficiency in view of the language that states the rental payments are determined to be distributions of earnings. It can hardly be said that anything paid nonstockholders would be an earnings distribution. Certainly any *148 ambiguity in the notice would have to be construed in favor of the taxpayer. It is doubtful if this deficiency notice would cast on petitioner the burden to justify the carriage rental deductions it took for rent paid on leases with nonstockholders. At any rate, we treated the taxicab and livery leases exactly the way the parties treated them: as nonstockholder leases where the rental paid was of some evidentiary value as comparison, but no part of disallowed rental deduction. We decided in respondent's favor the only issue which respondent said (up until the Rule 50 hearing after our opinion) was the only issue in the case. We still have the same record with nothing new added by way of pleading or evidence. We have answered the Appellate Court's specific inquiry as to the basis of our computation. The other matters about which the Court of Appeals had evidenced concern are, we believe, met by this revised opinion. Upon the record presented we now render the same opinion heretofore made with the changes and additional explanation contained herein. Order for the same deficiencies as are contained in our prior Order of November 5, 1968, will be entered. Footnotes
1. Petitioner did introduce a State Court judgment against petitioner holding some twentyseven plaintiff-lessors of carriage leases, for a year after the years here involved, were entitled to $1,500 each and, since they had only been paid $600 each, judgment for $900 in favor of each lessor-plaintiff and against Mackinac Island Carriage Tours, Inc., defendant, was rendered. Obviously, the decision and judgment of the State Court has no bearing on the issue in this case. Cf. Estate of Bosch v. Commissioner, 387 U.S. 456↩ (1967).
2. In its brief petitioner asked us to find that it "did not claim any depreciation on the carriages it rented from its stockholders or nonstockholders."↩
3. Neither of respondent's briefs cited a single opinion of this or any other court, although there is a wealth of case authority on the deductibility by a corporation of payments made by it as rent to its controlling stockholders. See citations in the opinions of this and the Circuit Court in this case.↩
4. Respondent's counsel made the same contention at the hearing of this case on the remand based on the ridiculous contention that the nonstockholders who leased carriages to petitioner were "quasi-stockholders."↩