Alice Pauline Dandeneau (formerly Alice Pauline Browne) v. Commissioner.
Dandeneau v. Comm'r
Docket No. 503-69.
United States Tax Court
T.C. Memo 1971-128; 1971 Tax Ct. Memo LEXIS 205; 30 T.C.M. (CCH) 542; T.C.M. (RIA) 71128; June 1, 1971, Filed Alice Pauline Dandeneau, pro se, P.O. Box 8113, University of Miami Beach, Coral Gables, Fla. Memo W. Piliaris, for the respondent. 543 STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined a deficiency of $77.43 in petitioner's income tax for the taxable year 1967. The question *206 before the Court is whether amounts withdrawn from a joint checking account by petitioner's former husband resulted in theft losses deductible under section 165 (a). [1]
Findings of Fact Some of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Alice Pauline Dandeneau (hereinafter referred to as petitioner) was a resident of Coral Gables, Florida, at the time of filing her petition herein. Petitioner filed her individual income tax return for the taxable year 1967 with the district director of internal revenue, Jacksonville, Florida. Petitioner, formerly Alice Pauline Browne, was married to David E. Browne (hereinafter referred to as David) on December 10, 1966, in Coral Gables, Florida. They had become acquainted through correspondence several years prior to their marriage, and conducted much of their courtship through the mails. Petitioner was given to understand by David that he was an engineer and owned an Austin-Healey automobile, a home and an airplane. David has served time on charges of forgery *207 and other crimes. He was released on parole from a State of Michigan correctional institution during 1966. On November 28, 1966, he made his initial report to his parole agent and then left his approved residence and failed to report for work at his approved job. At the time of their marriage petitioner was unaware of David's police record. A parole violation warrant was issued for David on December 19, 1966. After their marriage, petitioner and David moved to South Venice, Florida, where they purchased a home and where David secured a job. David misled petitioner by claiming that he was employed as an engineer when in fact he was working as a spray painter earning $30 per week. David left South Venice on or about January 27, 1967. He departed because the local sheriff was looking for him as a parole violator. Petitioner has been unable to locate David, since his departure. On May 22, 1967, the petitioner filed a complaint for divorce in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. Service in that proceeding was made by publication and David failed to answer or file any pleadings whatsoever. Therefore the circuit court entered a judgment *208 by default. A final judgment of divorce was entered by the circuit court on July 14, 1967. In it the circuit court determined that David was guilty of extreme cruelty and fraud, and reformed the deed by which the house in South Venice was acquired so as to expunge therefrom David's name as a grantee. While they were married, on December 19, 1966, petitioner and David opened a joint checking account numbered XXX,845 at the First National Bank of Venice, Florida. The initial deposit to the account was in the amount of $175.13 and was made with funds which had been withdrawn from petitioner's individual account at the Florida National Bank, Coral Gables, Florida. Petitioner and David borrowed $2,000 from petitioner's mother, Alice Young. A joint promissory note securing repayment of the loan was executed by both petitioner and David on January 20, 1967. Petitioner's mother made the loan so that petitioner and David would have funds with which to purchase a house. The money was used in part as a down payment on the house purchased by petitioner and David, and the remainder of about $1,000 was placed in the joint checking account the two had established. On January 27, 1967, petitioner *209 had the bank change account XXX,845 from a joint account to an individual account in her name only. The account was closed on February 14, 1967. During the life of the account deposits were made to it in the total amount of $1,197.13. None of the funds deposited were provided by David from his own sources. Checks known to have been drawn on the account by David totaled $1,095.45. The following checks were written by David for the purpose indicated: Date
Payee
Amount
December 17, 1966
Gulf Shores Realty
$130
This check was for rent of a house in which petitioner resided. Check paid by the bank on December 20, 1966.
January 9, 1967
G. C. Briner
$200
January 9, 1967
G. C. Briner
$300
These checks were part of the down payment on the house purchased in Venice. This house became the in- dividual property of the petitioner.
January 18, 1967
G. C. Briner
$ 80
This check was for a house payment. 544 All the checks written by David which cleared the account but remain unidentified as to purpose total $200, and were drawn in amounts ranging from $5 to $25. Of those clearly uttered by David, checks aggregating $185.45 were refused payment *210 by the bank for a lack of sufficient funds. Additional checks were written against account XXX,845 after petitioner had it changed from a joint account to an individual account in her name. All such checks except one in the amount of $25 were refused payment because of insufficient funds. The $25 check was drawn by David. Specific authorship of the balance of the additional checks is not known although some, and perhaps all, were made by David. Petitioner covered some of the dishonored checks with cash. On her 1967 income tax return petitioner claimed a theft loss in the amount of $500 as resulting from the withdrawal of funds from joint checking account XXX,845. Respondent, in a statutory notice dated November 27, 1968, disallowed the claimed loss deduction on the grounds that it had not been established that the loss resulted from theft within the meaning of the statute. Opinion The question before us is whether amounts withdrawn from a joint checking account by petitioner Alice Pauline Dandeneau's former husband, David Browne, during their marriage constituted theft within the meaning of section 165, [2] thereby entitled petitioner to a loss deduction for the taxable year 1967. *211 We agree with respondent that petitioner has not demonstrated she is entitled to the deduction claimed. The facts indicate that petitioner and David, after they were married, established a joint checking account in the First National Bank of Venice, Florida, on December 19, 1966, and that the account was closed by petitioner on February 14, 1967. Deposits totaling $1,197.13 were made to the account during the period it was open; of this amount $910 was withdrawn as a result of checks written by David. Checks totaling $710 were written by David *212 either for rent or house payments. This reduces the amount possibly taken by David solely for his own purposes to $200. The series of small checks making up the $200 aggregate were all written by David during the period he was living with petitioner. Petitioner has not demonstrated that no part of the $200 was used for her benefit. Saul M. Weingarten, 38 T.C. 75 (1962). Thus, exactly how much David kept for himself cannot be determined. It is open to this Court to make an approximation taking into account that it is petitioner's duty to prove the amount of the claimed loss. Cohan v. Commissioner, 39 F. 2d 540, 543-544 (C.A. 2, 1930). Applying this rule, we are unable to say that petitioner's alleged theft loss exceeded the $100 minimum that section 165(c) requires have been incurred before a theft loss deduction can be taken by an individual. We decide in favor of the respondent for the additional reason that no theft took place. Whether or not a theft occurred is determined according to the relevant state law. Saul M. Weingarten, supra, at 78; Grover Tyler, 13 T.C. 186, 193 (1949). At the time David wrote the checks in question, *213 he and petitioner were married and living together. The funds withdrawn by David were held in a joint account in the names of both petitioner and David. The account was in Florida where both petitioner and David resided at the time, and it appears that all the checks in question were drawn in Florida. The rule in Florida has been stated as holding that "* * * a co-owner of property cannot be held guilty of larceny of said property. The only exception to this rule is when a second co-owner has a special property interest therein superior to that of the first 545 co-owner." Escobar v. State, 181 So. 2d 193, 195 (Fla. App. 1965). Absent a declaration on the specific point by the Supreme Court of Florida, Escobar v. State, supra, must be given "proper regard" in determining the prevailing law in Florida. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). Following the rule of Estate of Bosch, we decide that the determining principle of Florida law is stated in Escobar v. State, supra.Since petitioner has not demonstrated she held in relation to the account a status such as bailee, lienor, etc., no special property interest has been shown *214 to exist. 50 Am. Jur. 2d Larceny sec. 86. Consequently the general rule stated above is dispositive of petitioner's claim. Cf. Saul M. Weingarten, supra.
Petitioner also appears to be claiming that the misstatements by which David induced her to marry him were made as part of a scheme whereby he gained access to her funds via the joint checking account. For larceny by false pretense to have occurred in Florida there must have been made a false representation of fact by the putative criminal for the purpose of obtaining property from his victim. Ex parte Stirrup, 155 Fla. 173, 19 So. 2d 712 (1944). At the time David made the representations in question the greater portion of the funds that went into the account were not in petitioner's possession or ownership for all the record shows. Indeed the greater part of the funds placed in the account were derived from the loan made to petitioner and David by petitioner's mother. The loan was for the express purpose of enabling petitioner and David to obtain a house. The record reveals that $580 of the money drawn from the account by David was expended for that purpose. Considering *215 this factor and the record as a whole, we are not convinced that the misrepresentations David made to induce petitioner to marry him had any purpose other than inducing the marriage. Cf. Samuel Towers, 24 T.C. 199, 242-243 (1955), affirmed as to this issue sub nom Bonney v. Commissioner, 247 F. 2d 237 (C.A. 2, 1957). In accordance with the foregoing, we decide that petitioner is not entitled to a theft loss deduction in any amount for the taxable year 1967. Decision will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100.↩