John D. Bennett, S.
The petitioners move for a construction and/or reformation of the decedent’s last will and testament so as to justify their claiming a charitable deduction *389 pursuant to section 2055 (subd [e], par [2], cl [B]) of the Internal Revenue Code (US Code, tit 26, § 2055, subd [e], par [2], cl [B]) as amended by the Tax Reform Act of 1969 (TRA) (83 US Stat 487 et seq.).
Decedent died on July 30, 1973 leaving a last will and testament dated April 29, 1968 which was admitted to probate on August 8, 1973. These proceedings were commenced prior to December 31, 1975.
Articles sixth and seventh of the decedent’s will govern the disposition of his residuary estate. Under article sixth the residuary estate is divided into three separate trusts equal in size but each for a different term. Qualified charities selected by the fiduciaries are the income beneficiaries for all three trusts. The first trust is to continue during the lives of the decedent’s wife and daughter. The second trust will terminate on the death of the last survivor of a class consisting of the decedent’s wife, daughter and three grandchildren. The third trust will terminate 21 years after the death of the survivor of the same class designated as the measuring lives for the second trust. Upon termination of the first and second trusts, the principal of each is to be subdivided among the decedent’s issue per stirpes and the subdivisions are to continue in further trusts for a period ending 21 years after the death of the last survivor of the decedent’s daughter and three grandchildren. Thereupon the subtrusts will terminate and be distributed to the beneficiaries thereof if living or if deceased to their issue or if there are none then one third is to be paid to the living intestate distributees of the decedent and two thirds to designated charitable institutions. Upon termination of the third trust the corpus is to be paid to decedent’s then living issue per stirpes or if there be none then one third to the then living intestate distributees of the decedent and two thirds to designated charitable institutions.
During the initial term of the three trusts the trustees are directed to pay the entire net income of each trust to the charitable beneficiaries provided, however, that the annual income distributions must equal at least ZVi% of the trusts’ original values even if it is necessary to make the payments by invading principal. The decedent specifically provided under the terms of his will that the charities selected by the fiduciaries must be institutions which qualify to receive contributions which are deductible under the Federal estate tax law.
At the time that the decedent executed his will the Federal *390 Internal Revenue laws permitted a charitable deduction for the present value of any term, life or remainder interest unconditionally bequeathed to charitable beneficiaries (see 26 CFR 20.2055-2). The present value of the income interest that a charity received under, a split interest trust was determined by the use of actuarial tables set forth in section 20.2031-7 of title 26 of the Code of Federal Regulations. At the time of the decedent’s death the regulations assumed interest at a rate of 3V2% compounded annually. The TRA radically amended the Federal tax laws with respect to charitable deductions for gifts or bequests of term or remainder interests to charities. Where charities in a split interest trust are the income beneficiaries the TRA provides such interest must be in the form of a guaranteed annuity or a fixed percentage must be distributed yearly of the fair market value of the property to be determined yearly (§ 2055, subd [e], par [2], cl [B]).
The Internal Revenue Service promulgated new actuarial tables for determining the value of annuities, term and remainder interest with respect to persons dying after December 31, 1970 and these tables assumed an interest rate of 6% compounded annually. The issue to be decided by the court is whether the court should construe and/or reform the decedent’s will so as to have the interest passing to charity qualify as a deduction under section 2055 (subd [e], par [2], cl [B]) and to reform the will to provide that the amount to be paid to the charities under article sixth be at least equal to 6% of the initial fair market value of the trust funds valued as finally determined for Federal estate tax purposes. It is contended that the decedent intended to plan his estate based on the assumed Internal Revenue Service interest rate that was used at the time of his death.
The Surrogate’s Courts in the State of New York have reformed wills on numerous occasions to enable the testators’ wishes to be carried out. Authority for the Internal Revenue Service to allow the charitable deduction as a result of the reformation made by the Surrogate’s Courts was granted by the regulations and the regulations were later codified dealing with remainder interest to charities under section 2055 (subd [e], par [3]) (Matter of Hammer, 81 Mise 2d 25, and the cases cited therein).
The policy adopted in Commissioner v Estate of Bosch (387 US 456) that the Internal Revenue Service need not be bound by determinations made by State trial courts was wisely *391 relaxed by congressional legislation because of the complexities brought about by the TRA. The courts in this State have been careful not to abuse this authority and have not hesitated to refuse to reform a will under TRA if they find that there was no charitable intent on the testator’s part and in the spirit of the legislation under the TRA no charitable deduction would be authorized (see Matter of Reinhardt, 81 Mise 2d 184). While much of the reformation deals with remainder interests to charity, there is no reason why reformation cannot be made when the charities are the income beneficiaries. Although the reformation of wills authorized under subdivision 2055 (subd [e], par [3]) specifically refers to remainder interests, in reviewing the notes to the legislation, the Congressional Reports, statements made by Congressman Burke in the Congressional Record on October 11, 1974 and statements of others appearing in the Congressional Record of that date as well as the conference reports and the reports of the Senate Finance Committee, clearly indicates that it was intended that the courts have the power to reform wills in proper instances even if the interest to charity is as an income beneficiary rather than as a remainderman.
In reading the will as a whole the court finds that the decedent was obviously mindful of the ability to obtain taxable deductions for his estate under the laws that existed at the time that the will was planned and executed. The decedent was tax conscious as is clearly indicated by his desire to obtain a maximum marital deduction as well as a charitable deduction. He specifically directed his fiduciaries to select only charities that would qualify for a charitable deduction. In addition, the court finds that the decedent did have an over-all charitable intent. He wanted charities to receive income for a prolonged period of time and even designated them as contingent remaindermen. The decedent is found to have had an over-all charitable intent and a desire to obtain a charitable tax deduction.
Under the terms of the decedent’s will the charities receive all of the income and if the annual income does not amount to 3V2% of the trusts’ original values then the trustees are to invade principal to guarantee the payment. The petitioners ask the court to reform the will to provide that the charities receive a guaranteed annuity of 6% of the initial net fair market value of the assets constituting the principal of each trust, the assets to be valued in the amounts fixed in the *392 Federal estate tax proceeding. The petitioners also ask for several other amendments to the will so as to conform with the requirements of TRA, many of which are already authorized by the enactment of EPTL 8-1.8.
If the relief sought is allowed and thereafter accepted by the Internal Revenue Service, the corpus of the trust will increase because the charitable deduction will be greater, leaving a larger residuary estate for the trusts, and the charities will receive more income because of a greater corpus. While reformation appears to be in the best interests of the estate, it could conceivably adversely affect the infant remaindermen. If the will were reformed as requested and the Internal Revenue Service thereafter disallowed a charitable deduction, there would be a smaller corpus and instead of being guaranteed 3V2% annually, the charities would receive 6% annually, which could possibly further diminish the corpus to the detriment of the guardian ad litem’s wards although excess income over 6% would be added to corpus.
In order to appraise the extent of this possible detriment and the likelihood of whether corpus would have to be invaded in order to pay the guaranteed annuity annually to the charities, the court directed that detailed studies be submitted to it as to anticipated yields from the estate’s portfolio and investments in general. This estate’s portfolio consists of extensive interests in real estate with long-term leases that limit the liquidity of estate assets. Some of the properties are better income-producing than others.
Following a review of the studies submitted, a conference was held to determine how a reformation could be adapted to the decedent’s will and satisfy the court’s concern over possible adverse results to the infant remaindermen. The court wanted to establish whether the trustees could realistically anticipate a yield from the portfolio of a sufficient amount to pay the annuity without having to diminish corpus. The court would not necessarily refuse the application if the estate could not guarantee a yield of 6% but one close thereto without invading corpus since the court would have to give consideration to the fact that if the charitable deduction were allowed there would be a larger corpus which would inure in the long term to the infant remaindermen.
Under article fourth of the decedent’s will he gave his wife a pecuniary amount equal to the maximum marital deduction and aside from a one million dollar bequest for his daughter, *393 in trust, and some relatively small bequests set forth under articles second and third, the balance of his estate is disposed of in paragraphs sixth and seventh as referred to above.
The court was advised at the conference that the surviving spouse, who is a petitioner and fiduciary under the terms of the decedent’s will, and the other two fiduciaries could fund the trusts with assets which would have a reasonable anticipation of yielding the necessary 6% or an amount close enough to satisfy the annuity without having to invade the corpus. The additional assets could be paid to the surviving spouse without jeopardizing the marital deduction as a result of Internal Revenue Procedure 64-19 (1964-5 I.R.B.) and some of the additional funds could be paid to the trustees under paragraph fifth of the decedent’s will which is for the benefit of the decedent’s daughter, all of which would be on consent of the decedent’s wife and daughter. Over and above these assurances is the tangible factor that a charitable tax deduction will result in the estate being increased by over $6,000,-000.
Accordingly, the court finds that it has the power to reform the decedent’s will, that the decedent did have a charitable intent, that he intended to obtain a charitable deduction to the extent set forth in the petition, and that the reformation provided for under the TRA should be granted on the condition that the trusts provided for under articles sixth and seventh of the decedent’s will be funded with assets of the estate as described above and that the decree prohibit distribution of the assets under articles fourth, fifth, sixth and seventh without the approval of the court. The court reserves the power to direct the particular assets to be used in funding the residuary trusts and retains jurisdiction of the proceedings to implement its directions. The petition is granted as herein provided.