TRANS WORLD AIRLINES, INC. for
and on Behalf of The WACKENHUT
CORPORATION

v.

The UNITED STATES.

No. 229–75.

United States Court of Claims.

Nov. 15, 1978.

Harvey G. Sherzer, Washington, D.C., for plaintiff; Robert L. Ackerly, Washington, D.C., attorney of record. Sellers, Conner & Cuneo, Washington, D.C., of counsel.

Donnie Hoover, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, and KASHIWA and KUNZIG, Judges.

ON PLAINTIFF'S MOTION FOR SUM-
MARY JUDGMENT AND DEFEND-
ANT'S CROSS MOTION FOR SUM-
MARY JUDGMENT

PER CURIAM:

This case comes before the court on plaintiff's request for review by the court of the recommended decision of Trial Judge Roald Hogenson, filed September 19, 1977, pursuant to Rule 166(c), on plaintiff's motion and defendant's cross motion for summary judgment, having been submitted to the court on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, with minor modifications as hereinafter set forth, it hereby affirms and adopts the decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover. Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross motion for summary judgment is granted, and plaintiff's petition is dismissed.

OPINION OF TRIAL JUDGE *

HOGENSON, Trial Judge: This contract case involves review under the standards of the Wunderlich Act, 68 Stat. 81, 41 U.S.C. §§ 321–22 (1970), of a decision of the National Aeronautics and Space Administration Board of Contract Appeals, NASA BCA No. 472–2, 75–1 BCA ¶ 11,146. Plaintiff, as prime contractor, claims entitlement to reimbursement of certain severance pay costs incurred by its subcontractor, The Wackenhut Corporation, which claim was denied by the board. Plaintiff challenges the finality of the board's decision on both factual and legal grounds.

Under the prime contract, NAS10–1242, a cost-plus-award-fee type, plaintiff (TWA) provided base support services to NASA at the Kennedy Space Center (KSC), Florida.

---

* The opinion and conclusion of law are submitted in accordance with Rule 166(c). The necessary facts are stated in the opinion.

Under subcontracts with TWA, Wackenhut furnished the security guard and fire protection services involved. The period of performance under the prime and subcontracts, as amended, extended from March 9, 1964, through March 31, 1971.

In mid-1970, NASA advertised for competitive bids for a follow-on prime contract and, on November 23, 1970, announced the award of the new contract to the Boeing Company. At the end of March 1971, TWA and Wackenhut ended their services at KSC. As hereinafter related, Wackenhut thereafter provided severance pay to its KSC employees, both union and nonunion (supervisory and administrative), and such payments to the nonunion employees are the subject matter of this case.

For the reasons herein stated, it is concluded that the board's decision is entitled to finality, that plaintiff's motion for summary judgment should be denied, that defendant's cross-motion for summary judgment should be allowed, and that plaintiff's petition should be dismissed.

Wackenhut initially refused to make severance payments to any of its KSC employees. As to the union employees, it took the position that because they were retained in their jobs by the Boeing Company, without interruption in their employment, they were not entitled to severance pay. Arbitration proceedings required by the labor agreements resulted in payment of such compensation to the union workers, and Wackenhut was reimbursed through TWA by NASA. Thereafter, Wackenhut was sued in a Florida state court by its nonunion (supervisory and administrative) KSC employees, and such court awarded them judgment for severance pay, which Wackenhut paid. The NASA contracting officer refused to reimburse Wackenhut, setting the stage for the board proceedings, and the resulting denial by the board of plaintiff's claim of entitlement to reimbursement for and on behalf of Wackenhut.

Pursuant to the subject prime and subcontracts, NASA reimbursed TWA and TWA, in turn, reimbursed Wackenhut for various costs involved in the fire protection and guard subcontracts, which were allowable under part 15 of NASA Procurement Regulations. The provision in issue states:

15.205–39 Severance Pay

(a) Severance pay, also commonly referred to as dismissal wages, is a payment in addition to regular salaries and wages by contractors to workers whose employment is being terminated. Costs of severance pay are allowable only to the extent that, in each case, it is required by (i) law, (ii) employer-employee agreement, (iii) established policy that constitutes, in effect, an implied agreement on the contractor's part, or (iv) circumstances of the particular employment.

Plaintiff did not contend before the board that Wackenhut's severance payments to its supervisory and administrative (S & A) employees were required by employer-employee agreement, but pressed the three-fold position that they were required by law, by established policy amounting to an implied agreement, and by the circumstances of the particular employment.

### Required by Law

As to this factor of the NASA procurement regulation, plaintiff based its argument before the board, and now before this court, on the fact that Wackenhut was required to make the severance payments in issue by a judgment entered in the Circuit Court for Brevard County, Florida. After Wackenhut had disbursed the severance pay to its union employees pursuant to the arbitration proceedings, its S & A employees filed a complaint in that court to recover such compensation, alleging that they had been hired pursuant to oral agreements and announced company policy that they would receive fringe benefits at least equal to those enjoyed by union personnel, and that the union employees had received the severance pay. By its answer, Wackenhut admitted all of the factual allegations. By third party complaint, Wackenhut then caused TWA to become a party to the suit. In the meantime, the S & A employees filed a motion for judgment on the pleadings, which the court granted without waiting

for the timely filing of an answer by TWA. Judgment was entered only against Wackenhut in a specified amount of recovery for each of the S & A employees. No hearing was held by the court to test the truth of the facts alleged by the S & A employees and admitted by Wackenhut, but not conceded by TWA. TWA did not participate in the suit on the merits, nor was it afforded any opportunity to do so. No action was taken by the court on Wackenhut's third party complaint against TWA. Neither NASA nor the United States was made a party to the suit at any stage of proceedings.

The board correctly ruled that it was not bound by the uncontested judgment of the state court when neither TWA nor the Government was given any opportunity to present its position to the court, and that the board was free to determine whether the severance pay costs in issue were otherwise reimbursable under the NASA procurement regulation. *See Dade Brothers, Inc. v. United States*, 325 F.2d 239, 240, 163 Ct.Cl. 485, 488–489 (1963), *cert. denied*, 377 U.S. 916, 84 S.Ct. 1181, 12 L.Ed.2d 186 (1964). Such regulation cannot reasonably be interpreted to mean that the "required by law" factor would be satisfied by the entry of a court judgment obtained in the manner established in this case. *Cf. Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Otherwise, a Government subcontractor, for reasons of its own choice, would be permitted to recover costs by collusive and uncontested court proceedings, which would thwart limitations on allowable costs within the terms of the Government contract. As will be shown herein, the facts presented to the board differed greatly from the uncontested facts upon which the state court relied in entering its judgment against Wackenhut only. The state court was neither asked nor did it undertake to rule on the right of Wackenhut or TWA to recover from NASA reimbursement of severance pay costs under the terms of the pertinent contract and regulation. The principle of collateral estoppel by judgment is plainly not applicable in this case.

### Established Policy Constituting Implied Agreement

The prime dispute before the board was whether the severance pay costs in issue were allowable as required by "(iii) established policy that constitutes, in effect, an implied agreement on the contractor's part" to provide such compensation to the S & A employees who were paid the same. The board found that TWA failed to prove Wackenhut had such an established policy and denied, on this claimed ground, the reimbursability by NASA of the severance pay costs incurred by Wackenhut with respect to its S & A employees.

It is concluded from a review of the entire administrative record that the board's findings of fact and conclusion on this issue were clearly supported by substantial evidence and were reasonable in the face of testimony and evidence presented on both sides of the controversy. The record is devoid of any evidence indicating any arbitrariness, capriciousness or bad faith on the part of the board in making its decision. As will be demonstrated herein, neither Wackenhut's practices, conduct nor communications establish a commitment on its part to provide severance payments to its KSC S & A employees.

As to its union employees at KSC, Wackenhut entered into collective bargaining agreements with them in January and April 1969, which provided severance pay rights. Wackenhut never executed any agreements with its KSC S & A employees, which provided such compensation. But plaintiff does not rest its case on a theory of employer-employee agreement. Rather, its position is that Wackenhut had a firmly established policy that at any location where it provided guard and fire protection services under either a Government or a commercial contract, and Wackenhut had performed a number of such contracts, the salaried employees (supervisory and administrative) at one job location would receive fringe benefits at least equal to those granted to hourly employees at the same site. Plaintiff

argues that since Wackenhut's union employees at KSC were entitled to severance pay, so too were its S & A employees at KSC under "established policy" of that company.

Quite logically, the board focused especially on Wackenhut's actual conduct regarding severance payments. It considered extensively the other evidence bearing on the more general issue whether Wackenhut's policy required at least equal fringe benefits for supervisors as allowed to union employees.

Wackenhut had only once before faced the problem of entitlement of a terminated KSC supervisory employee to severance pay. In May 1970, Mrs. Rose Bilodeau, such an employee of Wackenhut, was discharged in a reduction-in-force, and its handling of the matter looms significant, especially when considered with other prior and concurrent expressions of Wackenhut. Mrs. Bilodeau consulted an Equal Employment Commission representative at the installation, claiming that Wackenhut had violated her civil rights and that she was entitled to severance pay. During extended discussions of these problems between Government and Wackenhut representatives, Wackenhut consistently advised that Mrs. Bilodeau as a supervisory employee was not entitled to severance pay. Months later, Wackenhut reversed its position and, in January 1971, furnished her severance pay. Wackenhut's explanation of denial of severance pay to Mrs. Bilodeau from May 1970 until January 1971 was that it was a "knee-jerk" reaction to her civil rights claim but other actions of Wackenhut indicate that its policy was not to provide severance pay to any supervisory employee at KSC.

By letter dated May 20, 1970, Wackenhut's project manager at KSC, pursuant to the direction of Wackenhut's vice president, advised the NASA contracts compliance officer that the reason why Mrs. Bilodeau would not be paid severance pay was as follows:

The Wackenhut Corporation's company-wide policy prohibits the payment of severance pay to management (supervisory) personnel. Additionally, The Wackenhut Corporation's contract with Trans World Airlines, Incorporated at the Kennedy Space Center does not allow for the payment of severance pay to any Wackenhut personnel except those represented by certain bargaining units.

Wackenhut supplied a copy of this letter to TWA. It has been in communication with TWA within the past week or two about Wackenhut's nonunion employee policy concerning severance pay.

This policy statement remained unchanged until October 28, 1970. In the meantime, Wackenhut had submitted its subcontract proposals to TWA in connection with the Government's mid-1970 advertisement for bids for a follow-on contract at the expiration of the current TWA contract at the end of March 1971. The Wackenhut proposals contained no specifically designated funding provision for severance pay liability for its KSC S & A employees. TWA was, therefore, unable to present such information to NASA in its cost proposals concerning the follow-on contract. Only about a month prior to the Government's announcement of the award to the Boeing Company on November 23, 1970, did Wackenhut reverse its position about Mrs. Bilodeau's entitlement to severance pay.

By letter dated October 28, 1970, Wackenhut's vice president advised TWA that upon restudy of the matter it was reversing its position against providing severance pay to Mrs. Bilodeau; that Wackenhut had consistently followed the practice, although not formalized in writing, of providing at the same job location at least equal fringe benefits to supervisory personnel as those given to union employees; that the KSC union employees were entitled to severance pay pursuant to their bargaining agreements; and that Wackenhut would furnish severance pay to Mrs. Bilodeau. By letter dated November 2, 1970, TWA responded to Wackenhut, stated that the proposed providing of severance pay to Mrs. Bilodeau would not be an allowable cost because it would be contrary to Wackenhut's established policy at the time of her separation,

treated Wackenhut's current statements as a "present proposed unwritten policy" about severance pay for supervisory employees, suggested that Wackenhut reduce the same to writing, and advised that TWA would submit the same to the NASA contracting officer for approval.

In early December 1970, representatives of TWA and Wackenhut met and discussed cost reimbursement problems on their KSC operations. This occurred shortly after award of the follow-on contract to the Boeing Company. With respect to severance pay to S & A employees, Wackenhut's representatives advised that there was no policy in existence but that they believed that Wackenhut's president was about persuaded to issue a new policy if TWA would guarantee in writing in advance that TWA would reimburse Wackenhut for such severance pay costs. TWA advised that it would not provide any such guarantee but reimbursement would have to be determined on the basis of the NASA procurement regulation. Following these discussions, TWA, by letter dated December 8, 1970, requested information from Wackenhut as to what its severance pay liability would be as of March 31, 1971, stating that because Wackenhut's "established company policy includes only those employees covered by collective bargaining agreements," Wackenhut would not have any difficulty complying with the request.

On December 14, 1970, Wackenhut's vice president advised TWA that it had always had an established though unwritten policy that at every contract location its S & A employees were to be accorded fringe benefits at least equal to those provided to its union or hourly workers; and that to formalize such policy, Wackenhut was publishing a procedure in its Administrative Manual, a copy of which was then furnished to TWA. Wackenhut stated that it had concluded that it was mandatory to make the severance pay to Mrs. Bilodeau, and requested approval of such as a reimbursable cost. Wackenhut's policy statement, as published in this manner, designated as Wackenhut Fringe Benefits Policy Number 714, specifically provided that where its hourly employees at a specific job location are provided with fringe benefits by operation of a bargaining agreement or otherwise, its supervisory employees "will be provided at least equal benefits." There followed a list of such fringe benefits which included, among others, "severance pay."

Wackenhut had a written policy entitled "Severance Pay Policy—Salaried Employees," Number 711, issued October 1967 and revised February 1968, which provided severance pay to its supervisory employees, but not in the circumstances of the subject case because 711 contained the following qualification:

F. The provisions of this policy will not apply in the case of salaried employees working at a facility, where the decision to terminate services and thereby affecting the employees tenure with the Company is not under the direct control of our Company.

Sometime in 1968 Wackenhut rescinded number 711, leaving it without any written policy statement from that time until December 14, 1970, regarding severance pay for supervisory employees. The board reasonably considered that Wackenhut's elimination entirely of its expressed policy, such as it was, tended to negate the existence of any established policy. The board, however, clearly stated that such a policy need not be in writing but could be established by conduct in the providing of severance pay to supervisory employees.

With the foregoing considerations guiding the board in its assessment of the weight to be given to the Rose Bilodeau incident, it could, and did, reasonably conclude that Wackenhut's handling of that matter demonstrated that Wackenhut did not have a long-standing written or unwritten policy of affording supervisory employees severance pay. Since this series of events provided the most direct evidence of Wackenhut's policy, it was not only reasonable but virtually inevitable that the board would assign it great probative force. The board reasonably rejected Wackenhut's assertion that its denial of severance pay to

Mrs. Bilodeau was a "knee-jerk" reaction, engendered by Wackenhut's concern that its contractual relations with the Government would be jeopardized by a civil rights violation. Of course, it would seem that the reasonable reaction would have been for Wackenhut to provide Mrs. Bilodeau the severance pay in an effort to settle her civil rights complaint, especially if such payment was mandated by established policy.

There was no evidence before the board that Wackenhut had communicated to its KSC S & A employees that severance payments would be made to them and, as the board correctly concluded, this also negated any implied agreement between them to that effect.

### Required by Circumstances of the Particular Employment

Plaintiff buttresses its argument that under its established policy supervisory personnel were entitled to fringe benefits at least equal to those afforded to its union employees, that its KSC union employees were entitled to severance pay and that, therefore, its KSC supervisory employees were also entitled to such pay, by arguing that to do otherwise would jeopardize the morale of the S & A employees and create an unmanageable and unfair labor relations situation. Plaintiff argues that the disputed severance pay costs were thus required by the "circumstances of the particular employment," one of the bases for allowance under the pertinent NASA regulation.

The board's rejection of this theory is correct as a matter of fact and of law under Wunderlich Act standards. Plaintiff's arguments are based upon generalities, without discharging its burden to demonstrate that the following conclusions of the board are not supported by substantial evidence or are contrary to law:

It does not appear that a class of employees, such as supervisory personnel, have been shown to be entitled to severance pay "by reason of the circumstance of the particular employment." Nowhere did Appellant announce a policy that supervisory employees would receive sever-

ance pay, prior to December 14, 1970, and we do not consider that the negotiation in the new labor agreement of severance pay for non-supervisory employees had the effect of requiring its payment to supervisory employees. Other provisions of the labor agreement, giving advantageous treatment to [union] employees in wages, overtime pay, holiday pay, shift differentials, meal allowance, etc., were not automatically extended to supervisory personnel, and we do not see that severance pay can be singled out under this sub-section for different treatment.

Defendant has demonstrated ample evidence in the administrative record to support these conclusions of the board, and plaintiff's position is at best that the preponderance of the evidence favors plaintiff, a nonexistent standard of review under the Wunderlich Act.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.