**William L. PALOMBI**

v.

**GETTY OIL COMPANY t/a Getty.**

**Civ. A. No. 79–1103.**

United States District Court, E. D. Pennsylvania.

Oct. 27, 1980.

Kenneth M. Rodgers, Philadelphia, Pa., for plaintiff.

Richard G. Schneider, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

This action arose out of defendant Getty Oil Company's ("Getty") termination of plaintiff William L. Palombi ("Palombi") as the operator of a service station following some events deemed by defendant to be grounds upon which the franchise should be terminated, including Palombi's conviction in the United States District Court for price–gouging. This Memorandum Opinion is filed in support of the Court's Order of September 8, 1980, granting defendant's motion for summary judgment on plaintiff's only remaining claim.[1]

---

1. As originally filed, plaintiff's amended complaint alleged several violations of the federal antitrust laws in addition to the state law claim treated herein. Plaintiff alleged that this Court had jurisdiction over the antitrust claims by reason of 28 U.S.C. § 1331 and over the state law claim by reason of the Court's pendent jurisdiction. Diversity was not alleged, apparently because the plaintiff–a citizen of Pennsylvania ·then believed that the defendant corporation was also a citizen of Pennsylvania for purposes of 28 U.S.C. § 1332. On June 24, 1980, plaintiff filed a motion to amend the complaint to allege diversity. Defendant did not oppose the motion. Getty shortly thereafter filed the instant motion for summary judgment. On August 26, 1980, while both of these motions were pending, the Court held a final pretrial conference. At that time, plaintiff withdrew all but one of the antitrust claims. The Court thereafter granted plaintiff's motion to amend the complaint to allege diversity. Final-

**160**

A motion for summary judgment under Fed.R.Civ.P. 56 must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The evidence presented to the Court, and the inferences to be drawn therefrom, "must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Based on these standards, the Court finds that the record supports the following findings of fact: In 1968, Palombi entered into a "lease" for a service station from Getty for a term of one year. The lease was renewable annually "subject to termination at the end of the initial period or any subsequent year by either party upon ten days' prior written notice to the other." *See* Amended Complaint, Ex. A, ¶ 2. Monthly rent was based on the number of gallons delivered. The lease provided that the premises were to be used "solely ... as a motor vehicle service station, and for the sale of such commodities and services as are usually sold at such stations." Amended Complaint, Ex. A, ¶ 4. The lease also required that the service station be kept open between specified hours and that Palombi, as lessee, maintain an adequate stock of tires, batteries and accessories. Palombi was further required to maintain the premises "in a good, clean, and tidy condition at all times" and to obtain Getty's approval of any advertising located on the premises.

Under this agreement and subsequent renewals, Palombi operated the service station for several years without incident. Indeed, Palombi ranked first in sales of gasoline by–volume in the Philadelphia metropolitan area in each of the four years 1970–1973. *See* Motion of Defendant Getty Oil Company for Summary Judgment, Ex. 1; Answer to Interrogatory 21, at 13.

In 1974, the Government instituted criminal proceedings in this district charging Palombi with, *inter alia*, selling gasoline at prices exceeding limits established by the Federal Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751 *et seq.* (1976), and regulations promulgated thereunder–to which Palombi pleaded guilty. *See* Motion of Defendant Getty Oil Company for Summary Judgment, Ex. 5. Immediately thereafter, Palombi's gasoline sales fell and remained at a low level throughout the remainder of his tenure at the service station. *See* Motion of Defendant Getty Oil Company, Ex. 1; Answers to Interrogatories 15 and 21, at 10 and 13.

On March 31, 1975, Getty terminated Palombi's lease.[2] A memorandum seeking clearance of the termination from Getty's legal department recited a host of reasons for the decision.[3] The last paragraph devoted to this itemization includes the following statement:

> Perhaps the most damaging of all to the reputation of this particular station, Getty Oil Eastern and our Getty Dealer organization, were charges ... when [*sic*] the United States Attorney's office had filed criminal and civil actions against Mr. Palombi for allegedly overcharging customers ... and with falsifying records to the Internal Revenue Service to justify higher prices.

Motion of Defendant Getty Oil Company for Summary Judgment, Ex. 3, at 3. The price–gouging charge and subsequent con-

---

ly, on September 8, 1980, in the course of further argument on the motion for summary judgment, plaintiff withdrew the remaining antitrust claim and declared he would rely solely on the state law claim. The viability of that claim is the subject of this Memorandum Opinion.

2. Plaintiff does not allege that defendant failed to give proper notice or otherwise failed to satisfy the formalities of termination required by the lease.

3. Since the Court holds that Palombi's conviction for price–gouging is, without more, a sufficient ground for termination, it need not repeat here the catalogue of Palombi's abuses. Therefore, the Court's holding is based in no way upon any other of the alleged acts of the plaintiff.

viction are also the initial reasons specified by Getty in answer to the plaintiff's interrogatory seeking Getty's grounds for termination. *Id.*, Ex. 1; Answer to Interrogatory 8, at 4.

Nearly four years later, Palombi filed this action. Palombi's sole surviving claim at this stage of the litigation is that the gasoline station lease involved here constituted a franchise agreement and that Getty's termination of Palombi's franchise did not comply with the principles established by the Supreme Court of Pennsylvania in *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978).[4] Like the instant case, *Razumic* involved the termination of a service station "lease" by the leasing oil company. The parties had signed what was captioned a "DEALER LEASE," authorizing the lessee to operate a service station for a term of three years, subject to the right of the lessee to terminate the lease on any anniversary date by giving 60 days' advance written notice to the lessor. *Id.* at 377, 390 A.2d at 741. The agreement in *Razumic*, much like the agreement here, determined rent by monthly volume of gasoline sold and required the dealer to provide a certified statement containing all the information necessary to calculate the monthly rental. The agreement also did not allow the dealer to "make any additions, alterations or improvement to the leased premises nor place, alter, remove, deface, or obliterate any signs, trademarks or color arrangements appearing thereon" without the lessor's consent. Further, one of several standardized riders accompanying the "DEALER LEASE" required that the service station be operated "in such a manner as to reflect favorably on [the lessor supplier's] goodwill, trademarks and trade names." Finally, the same rider required the dealer to operate the service station 24–hours–a–day/7–days–a–week; stock a sufficient inventory of tires, batteries and accessories; provide adequate lighting; and, "maintain adequate and sufficient attendants." *Id.* at 374–376, 390 A.2d at 740–741.

The *Razumic* court held that such an agreement established a franchise relationship between the parties. *Id.* at 374, 390 A.2d at 740. That court noted that in such a relationship the franchisee benefits from the goodwill associated with the franchisor's trademark and products. However, as the court also noted, the continued value of that goodwill is heavily dependent upon the quality of the franchisee's service delivered in the name of the franchisor. The court reasoned that the investments necessarily undertaken justify the franchisee's expectation that those investments "will not be destroyed as a result of [the franchisor's] arbitrary decision to terminate their franchise relationship." *Id.* at 378, 390 A.2d at 742. Therefore, the Pennsylvania Supreme Court held that, "[c]onsistent with these reasonable expectations, and [a franchisor's] obligation to deal with its franchisees in good faith and in a commercially reasonable manner, [a franchisor] cannot *arbitrarily* sever its franchise relationship." *Id.* (emphasis added).

The agreement involved in this case clearly contemplates a franchise relationship. As our recitation of the facts should indicate, the agreement here contains substantially the same provisions as the agreement involved in *Razumic.*

Getty argues, however, that Palombi's termination was not arbitrary but was based, at least in part, upon Palombi's price–gouging conviction. In answer, Palombi contends that under *Razumic* a termination must be found to be reasonable under all the circumstances. Since the Court must be apprised of *all* the facts, Palombi argues, summary judgment is inappropriate.

█ The Court rejects Palombi's interpretation of *Razumic.* The significant language in *Razumic*, quoted earlier, declares only that there is a duty upon the fran-

---

4. Both parties agree that, since the last renewal of Palombi's lease occurred prior to the effective date of both federal and state statutes regulating gasoline dealer terminations, neither is directly controlling. *See* Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–06 (Supp. II, 1978); Pennsylvania Gasoline Act, Pa.Stat. Ann. tit. 73, § 202–5 (Purdon Supp. 1980).

chisor not to act arbitrarily.[5]  The Court interprets this language to mean that, if the franchisor can show at least one legally sufficient reason to terminate, the termination is valid under *Razumic.*

The law could not reasonably be otherwise.  A rule to the contrary would require courts to reexamine the reasonableness of an exercise of business judgment. *Razumic* seeks only to ensure that some sufficient reason exists for the termination. It does not guarantee every dealer a right to what would amount to *de novo* review.

The Court turns then to the legal sufficiency of Getty's proffered ground for termination.  Certainly there can be few more compelling justifications for terminating a service station franchise than the indictment and conviction of the franchisee for price–gouging.  Through trademarks and advertising, the consumer comes to link supplier and dealer.  When the dealer is convicted of price–gouging, the suggestion of fraud necessarily taints the supplier's reputation.  That such a charge and conviction would support a dealer's termination seems indisputable.

The Court finds additional support for this holding in the Pennsylvania Gasoline Act, Pa.Stat.Ann. tit. 73, §§ 202–1 *et seq.* (Purdon Supp.1980).  In doing so, the court follows the example of the court in *Razumic.*  Although the provisions of the Act were not expressly applicable to the agreement in *Razumic,*[6] the *Razumic* court relied upon it as an embodiment of "sound and beneficial legislative judgments which reflect both the expectations and obligations inherent in this franchise relationship."  480 Pa. at 380, 390 A.2d at 743.  Since the Act prohibits suppliers of petroleum products from terminating service station operators unless the supplier acts for "one of" nine specified reasons, the *Razumic* court concluded that the Act supported the view that a franchise termination could not be arbitrary.

The parties agree, and this Court concurs, that the Act is also not directly applicable here.  Nevertheless, the Act lends support for this Court's decision. .

First, the Act does not require that the termination be found to be reasonable under *all* the circumstances.  It is enough that the termination be based upon "one of" the enumerated reasons.  Thus, the Act supports this Court's view of *Razumic* that a termination is permissible if there is one commercially reasonable basis for it.

Further, the Act's enumerated reasons include two which comprehend the facts of this case:

(8) Failure by the lessee dealer to comply with Federal, State or local laws or regulations which are related to the operation of the gasoline service station business and which may affect the relationship between the lessor supplier and the lessee dealer and such failure to comply therewith has or may have an adverse effect on the lessor supplier.

(9) Conviction of the lessee dealer of a criminal offense *which is related to the operation of the business* or would affect the ability of the lessee dealer to operate the business *or would tend to defame the reputation of the lessor supplier.*

Pa.Stat.Ann. tit. 73, § 202–3(b)(8), (9) (Purdon Supp.1980) (emphasis added).

With regard to the first of these, Palombi's failure to comply with federal law or

---

5.  In the passage quoted earlier stating the holding of *Razumic,* the Supreme Court of Pennsylvania does refer to the duty of a franchisor "to deal with its franchisees in good faith and in a *commercially reasonable manner.*"  480 Pa. at 378, 390 A.2d at 742 (emphasis added).  This passage merely states that to terminate nonarbitrarily *is* to act in a "commercially reasonable manner."  It does not hold that the termination must be completely reexamined by the Court to determine whether it was reasonable under all the circumstances.

6.  The Act states that it "shall not apply to any agreement entered into prior to the effective date of this act, except that a renewal of such agreement shall not be excluded from the application of this act."  Pa.Stat.Ann. tit. 73, § 202–5 (Purdon Supp.1980).  The Act became effective on February 24, 1976, almost six years after the signing of the lease in *Razumic* and almost a year after the last renewal of Palombi's lease.

regulations is conclusively established by his conviction. Moreover, since the federal law violated regulates the price charged at the pump, it is clearly "related to" the operation of a service station and may "affect" the relationship between the lessor supplier and the lessee dealer. Lastly, the failure to comply may indeed adversely affect a lessor supplier by causing consumers to buy elsewhere and subjecting the supplier's reputation to severe and irremediable damage.

▓▓▓ Even stronger in its support of this termination is the second–quoted provision. The offense of which Palombi was convicted — price-gouging — is "related to the operation of the business" because determining the price of the goods or services to be sold is of the essence of any business. Moreover, the offense is one which would "tend to defame the reputation of the lessor supplier." A franchise relationship purposely creates in the public mind so close an association between the dealer's service and the supplier's name that a dealer's conviction for price–gouging cannot help injuring

the supplier's reputation for integrity and fairness.[7] Thus, under this provision, Palombi's price–gouging conviction is a legally sufficient ground for termination in those two respects.

▓▓▓ Since the Court concludes that *Razumic* requires only that the termination of a service station franchise not be arbitrary and, since the Court further finds Palombi's price–gouging conviction to be a legally sufficient ground for termination, the Court must conclude that Getty is entitled to judgment as a matter of law,[8] and so ordered on September 8, 1980.

---

7. The Court notes that the Act does not require that the conviction be shown to have actually defamed the supplier's reputation. The plain language of the statute requires only that the conviction be of an offense which by its nature would *tend* to defame the supplier's reputation.

8. The Court, by Order of September 8, 1980, rejected Getty's alternative ground for summary judgment. Although the Court's view of this argument is not dispositive of the case, the Court notes here the reasoning behind its rejection: Getty argued that this case is controlled not by *Razumic* but by *Amoco Oil Co. v. Burns*, ·-- Pa.Super. ——, 408 A.2d 521 (1979), *petition for allocatur granted*, May 16, 1980. In *Burns*, the court held that the *Razumic* standards do not apply where the lessor–supplier "explicitly reserve[s] the power to terminate without cause." *Id.* at ——, 408 A.2d at 524. The *Burns* court noted that the agreement in *Razumic* accorded a right to terminate only to the lessee–dealer, while the lease in *Burns* accorded such right to both parties "without limitation as to reasons or cause." *Id.* The *Burns* court concluded that this distinction was sufficient to permit the lessor–supplier to terminate arbitrarily. *Id.*

Where a federal court is exercising diversity jurisdiction and applying state law, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and there is "no decision by . . . [the State's highest] court then federal authorities must apply what they find to be the

state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Therefore, a federal court may decline to follow a decision of a state intermediate appellate court where the decision–despite proper regard–is clearly contrary to the reasoning of a recent decision of the state's highest court rendered on substantially the same point of law.

Getty correctly states that the agreement in this case is functionally identical to the agreement in *Burns*. However, these leases do not *explicitly* state that termination may be without cause. They merely permit the lessor as well as the lessee to terminate, without mentioning whether termination may be without cause. To allow such language–or lack of language–to avoid the protections of *Razumic* would significantly undercut the decision. Dealers not covered by recent legislation would be subject to the sudden and unreasoned loss of their businesses because of a quirk of draftsmanship that hardly warned them that they could no longer expect termination only for cause.

This Court concludes that, when the Supreme Court of Pennsylvania hears this case on *allocatur*, it will reverse. Thus, the Court could not grant summary judgment for the defendant on this ground.