T.C. Memo. 1999-190


UNITED STATES TAX COURT


LINDA J. BAXTER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JIMMY R. BAXTER AND JANET S. BAXTER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18403-97, 18749-97.          Filed June 10, 1999.


James Allen Brown, for petitioner in docket No. 18403-97.

James W. Smith, for petitioners in docket No. 18749-97.

Donald E. Edwards, for respondent.


MEMORANDUM OPINION

CARLUZZO, Special Trial Judge:  These consolidated cases were heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986, as amended and in effect at the time that the petitions were filed, and Rules 180, 181, and

182 of the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years 1993 and 1994.

Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Petitioner(s) | Year | Amount |
|---|---|---|
| Linda J. Baxter | 1993 | $4,800 |
| Linda J. Baxter | 1994 | 2,055 |
| Jimmy R. & Janet S. Baxter | 1993 | 9,922 |
| Jimmy R. & Janet S. Baxter | 1994 | 4,450 |

The issue for decision is whether during each year in issue certain payments made by Jimmy R. Baxter to or on behalf of Linda J. Baxter must be included in her income as alimony and may be deducted by him as such. The resolution of this issue depends upon whether the liability of Jimmy R. Baxter to make the payments terminates upon the death of Linda J. Baxter.

Background

Some of the facts have been stipulated and are so found. Petitioners resided in Benton, Arkansas, at the time the petitions were filed in these consolidated cases.

Linda J. Baxter (Linda) and Jimmy R. Baxter (Ray), were divorced from each other on May 16, 1991. The divorce decree incorporated by reference the terms of a "Child Custody, Support & Property Settlement Agreement" entered into by Linda and Ray, dated April 17, 1991 (the agreement). The agreement is

characterized as a property settlement agreement in paragraph 6 of the divorce decree.

Relevant for our purposes, paragraph 5 of the agreement provides as follows:

> [Ray] will quitclaim to * * * [Linda] any and all interests that he may have in the parties' marital home and the contents therein, with the exception of his personal effects * * *. Additionally, * * * [Ray] will pay the remaining indebtedness on this home at Benton Savings and Loan Association, provided that * * * [Linda] and the parties' children continue to live therein. This obligation to continue making these house payments would terminate should * * * [Linda] and the parties' children move from this residence or should * * * [Linda] remarry. Additionally, * * * [Ray] shall pay the costs of necessary and reasonable yard maintenance on this dwelling during the next three years or until such time as * * * [Linda] should move therefrom with the parties' children or remarry, whichever is shorter.

In accordance with the above provisions, Ray conveyed his interest in the marital home to Linda. The references to "children" in paragraph 5 of the agreement are to the son and daughter (who were minors during all relevant periods) of Ray and Linda.

As a result of a custody dispute, in 1994 the children moved from the marital home; Linda continued to live there throughout the years in issue.

Subsequent to the divorce decree, Linda and Ray were involved in several disputes with respect to support (spousal and child) and custody. The local court that had jurisdiction over

these disputes construed Ray's obligations under paragraph 5 of the agreement to continue as long as Linda did not remarry or move from the marital home, even though the children had moved (the consequence of Linda's death was not addressed).

During the years in issue Ray made the following payments to or on behalf of Linda pursuant to paragraph 5 of the agreement:

|                    | 1993      | 1994      |
|--------------------|-----------|-----------|
| Home mortgage      | $23,384   | $13,691   |
| Yard maint.        | 940       | -0-       |
| Total payments     | 24,324    | 13,691    |

Ray deducted as alimony the total payments (the payments) for each year on the joint Federal income tax return that he filed for those years with Janet S. Baxter (Janet). Linda did not include these amounts as alimony income on her Federal income tax returns for those years.

Respondent took inconsistent positions in the notices of deficiency upon which these consolidated cases are based. In the notice of deficiency sent to Ray and Janet, respondent disallowed the alimony deductions attributable to the payments upon the ground that the payments did not constitute alimony within the meaning of section 71(b), and, therefore, could not be deducted under section 215. In the notice of deficiency issued to Linda, respondent determined that the payments must be included in her income for the appropriate year as alimony under section 71.

Discussion

Gross income includes amounts received as alimony. See secs. 71(a), 61(a)(8). Amounts includable as alimony in a payee spouse's gross income are deductible to the payor spouse. See secs. 71, 215. There is no dispute among the parties on these points. Linda and Ray, of course, disagree as to the characterization of the payments for Federal income tax purposes. Respondent now takes the position that the payments fit within the definition of alimony.

The definition of alimony for Federal income tax purposes is contained in section 71(b)(1). A payment constitutes alimony within the meaning of that section if the payment is made in cash (including checks and money orders payable on demand, see sec. 1.71-1T(a), Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984)), and (1) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument; (2) the divorce or separation instrument does not designate such payment as a payment that is not includable in the payee's gross income under section 71 and is not allowable as a deduction to the payor under section 215; (3) if the individual and the spouse are legally separated, they are not members of the same household; and (4) the payor has no liability to make any such payment for any period after the death of the payee. See secs. 71(b), 215(b). The parties agree that the payments satisfy all but the

last requirement, that is, whether Ray would be liable to make the payments for any period after Linda's death.

Ray and Linda could have expressly provided for the effect of her death upon his liability to make the payments otherwise provided for in paragraph 5 of the agreement, but for whatever reason, they did not. They now disagree as to what was intended by that paragraph.

According to Linda, as long as the children resided in the marital home, Ray would be required to make the payments regardless of whether she was dead or alive. Linda further argues that Ray's obligation to make the payments was part and parcel of the property settlement between them and on that ground should not be considered alimony.

Ray and respondent disagree with Linda on both points. They argue that if Linda died, Ray's obligation to make the payments would terminate because, obviously, she would no longer be living in the marital home. They further contend that the payments were not part of the property settlement but for the support of Linda.

The language of paragraph 5 of the agreement is susceptible to different interpretations because of the use of the word "and" both in the sentence that establishes Ray's obligation to make the payments ("[Ray] will pay the remaining indebtedness on [the marital home]* * * provided that * * * Linda and the * * * children continue to live therein"), as well as in the sentence

that terminates that obligation ("This obligation to continue making these house payments would terminate should * * * [Linda] and the * * * children move from * * * [the marital home]"). (Emphasis added.)  Furthermore, Ray was obligated to pay for reasonable yard maintenance for the marital home "during * * * [a specified period] or until such time as * * * [Linda] should move therefrom with the * * * children or remarry, whichever is shorter." (Emphasis added.)

As long as the children resided in the marital home, one construction of the above language would require Ray to make the payments regardless of whether Linda continued to live there. Under this construction, Linda's death would be of no significance.  On the other hand, if the children moved from the marital home, which they did in 1994, Ray's obligation to make the payments would only continue as long as Linda continued to live there, which, obviously, she could not do after her death.

Because paragraph 5 of the agreement does not expressly address Ray's liability to make the payments in the event of Linda's death, we look to Arkansas law in order to determine his liability in that regard.  See Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. per curiam without published opinion 829 F.2d 39 (6th Cir. 1987).

In Arkansas, "Questions relating to the construction, operation, and effect of separation agreements between husband

and wife are governed, in general, by the rules and provisions applicable in the case of other contracts". <u>Sutton v. Sutton</u>, 771 S.W.2d 791, 792 (Ark. Ct. App. 1989).  "[D]ifferent clauses of a contract must be read together and construed so that all of its parts harmonize if that is possible." <u>Dodson v. Dodson</u>, 825 S.W.2d 608, 611 (Ark. Ct. App. 1992); see also <u>Floyd v. Otter Creek Homeowners Association</u>, 742 S.W.2d 120 (Ark. Ct. App. 1988).  Furthermore, where there is some ambiguity in the provisions of a separation agreement, it is the court's duty to determine the intent of the parties.  <u>Sutton v. Sutton</u>, <u>supra</u> at 792.

An Arkansas court has never addressed what Ray and Linda intended by the above cited portion of paragraph 5 of the agreement with respect to Ray's liability to make the payments for any period after Linda's death.  We are bound, nevertheless, to reach a result that would be consistent with that of Arkansas's highest court if the issue were presented to that court for resolution.  See <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967); <u>Boyter v. Commissioner</u>, 74 T.C. 989, 995 (1980), remanded on another issue 668 F.2d 1382 (4th Cir. 1981).  In so doing, for the following reasons, we find that Ray's liability to make the payments terminates upon the death of Linda.

Ignoring irrelevant contingencies, reading paragraph 5 of the agreement as a whole makes it apparent that Linda and Ray intended for him to make the payments only while she lived there. Because the agreement provided that the payments would terminate upon the occurrence of contingencies other than Linda's death (e.g., remarriage or relocation), a reasonable interpretation of the provisions would lead to the conclusion that the payments were for her support. Obviously, at the time that the agreement was entered into, Ray and Linda anticipated that the children would reside with her at the marital home, but Ray's liability was not dependent upon it. Even after the children moved from the house, Ray was required by local court order to continue the payments. We think it unreasonable to construe the agreement in such a manner as to require that the payments continue in a situation in which Linda would move from the marital home, but the children would remain. Such a construction would be necessary to support Linda's position in this case.

As we would expect the highest court of Arkansas would do, we find that the most reasonable construction of the relevant portion of paragraph 5 of the agreement leads to the conclusion that the Linda and Ray did not intend for him to make the payments after her death. That being so, Ray's liability to make the payments pursuant to the relevant portion of paragraph 5 of the agreement would not continue for any period after Linda's

death.  It follows and we hold that the payments constitute alimony within the meaning of sections 71 and 215 that for the years in issue must be included in Linda's income and are deductible by Ray.

To reflect the foregoing,

<u>Decisions will be entered for petitioners in docket No. 18749-97 and for respondent in docket No. 18403-97</u>.